## Case No. 4,870.

### FLINN et al. v. The LEANDER.

[Bee, 260.] [1]

District Court, D. South Carolina. 1808.

BEE, District Judge.

The brig Norfolk, on the 19th of March last, 250 miles from this port, to which she was bound, fell in with the Leander; and on the afternoon of the third day arrived with her in Charleston. The Leander had 56 slaves on board, but no white person. In the evening of the 19th two of the slaves died. The wind was east, and the ship was standing eastward. From her manner of steering, and from a piece of a torn sail which looked like a white flag, she appeared to be in distress. On approaching the vessel, the negroes invited them to come on board, and an interpreter was afterwards found who explained their wish more clearly. Captain Marson then agreed to send on board five hands, with nearly one half of his provisions. The negroes told these men that all the white people had died; but, after their arrival in port, part of a journal was found by which it appeared that the

---

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

[1] [Reported by Hon. Thomas Bee, District Judge.]

crew had been driven, or thrown, overboard; two had been killed. The negroes said that eight or ten vessels had fallen in with them, without assisting them. That they had been boarded by one, who took away six or seven slaves, under a promise of supplying the rest with provisions; which, however, was not done. It appeared that the Leander was tight, and her rigging good, but she had no sails. It was evident from the last entry in the logbook that no reckoning had been kept for a month; from whence it was reasonably inferred that the negroes had been for that time in possession. Such is the evidence given by the claimants; and the nature of the case admits no better. It seems credible, and I must act upon it, in fixing the compensation due to the crew of the Norfolk. There being no white persons on board, and the slaves being regarded as cargo, I must consider the Leander as derelict: but she does not seem to have been in any immediate danger. She was in tight condition, had on deck provisions for eight or ten days, and more in her hold. They had fallen in with many vessels, the Norfolk actually took charge of them, and would have been assisted, if necessary, by a schooner called the Success bound to Boston: the services of the latter were declined, because they were not wanted. Indeed, from the prevalence of easterly winds at this season, it is highly probable that the Leander would have drifted on shore. This happened in the case of the Priscilla, and in that of the St. Peter; both within the knowledge of this court. The Leander actually arrived in port on the third day after she fell in with the Norfolk. No tempestuous weather seems to have threatened the vessel or the slaves, within that space of time. Nevertheless, considerable service was rendered; and it has been proved that the ship and cargo are worth nearly sixteen thousand dollars. I shall under all the circumstances adjudge one third of the net proceeds of this property by way of compensation. In other cases of derelict, attended with greater danger and exertion, I have sometimes given one half. But this is no general rule; every case must be judged of according to circumstances.

It appeared, in a subsequent proceeding, that the captain and owners of the Norfolk had concealed two slaves, part of this cargo; from which it was contended that they had forfeited their share of salvage; and that the forfeiture enured to the owners of. the Leander, not to the other salvors. The judge said that the case of Mason v. The Blaireau, 2 Cranch [6 U. S.] 240, was conclusive upon both points, and decreed accordingly a forfeiture of that part of the salvage, to the owners of the Leander.